## In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Aaron Wayne Pellum, #288440, | ) | |
| | ) | Civil Action No. 9:05-3339-JFA-GCK |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Stan Burtt, Warden of Lieber Correctional | ) | |
| Institution; NFN Bodison, Associate | ) | |
| Warden; NFN Thompson, Associate | ) | |
| Warden; NFN Nettles, Major; NFN Elka, | ) | |
| Lieutenant; G. Antley, Investigator at | ) | |
| Lieber Correctional Institution; NFN | ) | |
| Nunley, Captain; NFN Smith, Doctor, | ) | |
| all sued in their individual and official | ) | |
| capacity; and L. Carrington, Institutional | ) | |
| Grievance Coordinator at Lieber | ) | |
| Correctional Institution, sued in her | ) | |
| individual capacity and official capacity; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I. INTRODUCTION

The Plaintiff, Aaron Wayne Pellum ("Plaintiff" or "Pellum"), is a state prisoner who was incarcerated in the South Carolina Department of Correction's Lieber Correctional Institution ("Lieber" or "LCI") at the time of the events giving rise to this action. He has filed this action against the above-named defendants seeking relief pursuant to Title 42, United States Code, Section 1983 for alleged violations of his constitutional rights by the above-named Defendants.

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Defendants and the Plaintiff have filed motions for summary judgment. [100; 104] As these are dispositive motions, this Report and Recommendation is entered for review by the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp.

2d 594 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir.1990).  Such is the case with the present complaint.

### III.  FACTUAL BACKGROUND

The facts, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

Plaintiff alleges in his Complaint that on December 25, 2004, while he was housed in the General Population of the Stono Unit in Lieber , fellow-inmates Jimmy Johnson and Tony Lee robbed him of his wristwatch and wedding band.  Plaintiff informed Sargent Hamilton that he had been robbed and stated that the inmate/robbers would kill him if he reported the robbery. Sargent Hamilton sent Plaintiff to the Operations Building and told Defendant Lieutenant Elka of the robbery.  Plaintiff asked to be placed in Protective Custody, but Lt. Elka refused the request, but placed Plaintiff in the Operations Holding Cell.  Plaintiff contends the Holding Cell had no proper ventilation and was cold, with an eight (8) inch wide bench built in to the wall, with no toilet or running water.  Plaintiff was given a Styrofoam cup to use as a toilet.  He was not given a mattress or blanket.  Lt. Elka refused Plaintiff's request for a blanket and also refused Plaintiff's repeated requests to be placed in Protective Custody.  Plaintiff asked that his blanket be brought to him, or that he be escorted back to his Unit so he could get his blanket.  These requests were denied. [1]

Plaintiff states he was kept in the Protective Custody cell for five days (until December 30, 2004).  During that time, Plaintiff saw Defendants Warden Burtt, Major Nettles, Associate Warden Thompson, and Associate Warden Bodison; Plaintiff related the robbery incident to each and requested Protective Custody.  In the alternative, he asked to be released from the cell, because the light was never turned off, and he had no toilet, running water, blanket, clean

clothes, or hygiene items, and had to use cups and food trays as a toilet. His requests were denied by these Defendants.

Although Plaintiff was without a mattress for the first four days in the holding cell, on December 29, 2004, another inmate, Brian Evans ("Evans"), was placed in the holding cell with Plaintiff, and Evans and Plaintiff were provided with mattresses. The next morning, Plaintiff was awakened by Evans, who was yelling because another Defendant, Captain Nunnally, was standing on Evans' hand. Plaintiff pushed himself up to his knees and Captain Nunley kicked him in the back, which caused an immediate and intense pain. Captain Nunley told Plaintiff and Evans to put the mattresses in the hallway, and ordered the inmates into an adjoining holding cell. Plaintiff asked Captain Nunnally to get the nurse or doctor because he felt like something was "broken" internally where he had been kicked. Captain Nunnally ignored him and walked away.

Later on December 30, Plaintiff spoke to Major Nettles and told him that Captain Nunnally had assaulted him and he needed medical attention. Major Nettles refused Plaintiff medical attention, and had Plaintiff and Evans taken to a maximum unit lockup, where they were placed in the same cell and that night slept on steel beds without mattresses.

On December 31, 2004, Plaintiff received a mattress but he could not get on his assigned bunk (the top bunk) due to his injuries, so he had to sleep on the floor. Also on that day, he gave the morning nurse a request for medical attention, and showed the nurse the visible injury on his back. The nurse told him she would put him down to see Defendant Dr. Smith. Plaintiff also saw the Special Management Unit ("SMU") nurse that day, who observed a welt on his back and said she would put him down to see a medical doctor. The SMU nurse brought Plaintiff several muscle relaxers to ease Plaintiff's pain until he could see Dr. Smith on January 5, 2005. The SMU nurse opined that Plaintiff might have internal injuries and told Plaintiff she would

document his injuries.  Also on December 31, 2004, Plaintiff filed a grievance against Captain Nunley for the unprovoked assault.  Plaintiff was told on January 11, 2005 that the grievance was put "on hold," despite Plaintiff's understanding that any grievance which alleged a criminal act would be immediately referred to the Inmate Grievance Branch.  Plaintiff contends that by putting his grievance on hold, the grievance could not be properly addressed, and also it gave Plaintiff's injury time to heal.

On January 4, 2005, Plaintiff saw "Nurse Terry," and told Nurse Terry that the injury was causing pain in his back, leg, and right testicle.

On January 5, 2005, Plaintiff saw Associate Warden Thompson and told him of the assault, and requested medical care.  Associate Warden Thompson did nothing.  Plaintiff did not see Dr. Smith that day.  Officer Fuller tried to get Head Nurse Sanders to see him, but she refused to speak with Plaintiff.  The SMU nurse later said Plaintiff would be seen by Dr. Smith on January 10.  Also on January 5, 2005 Plaintiff met with Defendant Investigator Antley and told him about, and showed him, the injury.  Investigator Antley refused to take a written statement from him and refused to take a photograph of Plaintiff's back injury.[1]  Thereafter, Plaintiff filed a grievance against Investigator Antley.  Nothing was done with this grievance.  Plaintiff alleges that Defendant Carrington, the Institutional Grievance Coordinator at Lieber, told him to write internal affairs to resolve the matter, but that Carrington conspired with Investigator Antley and/or Warden Burtt to keep Plaintiff's grievances from the Inmate Grievance Branch and away from Internal Affairs.

---

[1]    Contrary to Plaintiff's allegation in his complaint, Investigator Antley did make a written "Report of Interview" on January 6, 2005.  This Report is attached to Plaintiff's Response [116] filed with the court.  The Report reads in part that Investigator Antley saw "an approximately six (6) inch rectangular shaped bruise on Pellum's lower left back near his kidney. . . . No photos were taken of the bruise."  [116]

Based upon what the SMU nurse had told him, Plaintiff thought he would see Dr. Smith on January 10. However, that appointment did not occur. As of January 10, Plaintiff still had not seen a doctor or received anything for his severe pain.

On January 12, Plaintiff was seen by Dr. Smith, who ordered a urine test and prescribed pain medicine for Plaintiff. The urine test detected blood in his urine. Plaintiff received his prescribed pain medicine on January 22, 2005, and contends that Dr. Smith failed to perform a follow-up examination. Thus, Plaintiff waited thirteen (13) days to see Dr. Smith, despite Plaintiff's numerous requests (and the requests of the nurses), and Plaintiff waited twenty-two (22) days for pain medication. Plaintiff alleges that because of Dr. Smith's deliberate indifference to his serious medical needs, Plaintiff suffered extreme, prolonged pain of which Dr. Smith was aware. [1] Plaintiff remained in SMU, sleeping on a mattress on the floor, until February 14, 2005, when he was transferred to another unit.[2]

Plaintiff alleges that the Defendants violated his rights under the Eighth and Fourteenth Amendments to the united States constitution, as well as Article 1 of the South Carolina constitution and acted in violation of South Carolina Code Sections 22-3-460 and/or 16-3-620 and/or 16-25-10–65 and 16-3-60 as a result of the assault. [1]

Plaintiff requests injunctive relief to ensure that: (1) he receives proper medical care; (2) policies are established which address the maximum amount of time an inmate is permitted to stay in a holding cell; (3) Plaintiff is "permanently separated" from all Defendants because he fears retaliatory action will be taken; (4) Defendant Nunnally is criminally charged with assault and battery of a high and aggravate nature; and (5) Warden Burtt and Defendant Carrington are "advised sternly" to follow the SCDC grievance procedures, policies, and deadlines. Plaintiff

---

[2]     *See* Plaintiff's Opposition [115] at p. 4.

also seeks a jury trial and compensatory and punitive damages in the amount of $10,000.00 from each on the nine (9) Defendants.  [1]

## IV.  PROCEDURAL HISTORY IN FEDERAL COURT

Plaintiff filed this action on November 21, 2005 against the Defendants and service of process was ordered upon them.  On January 9, 2006 the Defendants answered, asserting, among various affirmative defenses, that Plaintiff had failed to exhaust his administrative remedies prior to filing suit.  [12]

After the Defendants requested and received two extensions of time in which to file their dispositive motion, [40; 48] the Defendant filed a Motion for Summary Judgment on April 24, 2006.  [53]  The undersigned issued an Order, filed on April 25, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motion for Summary Judgment within thirty-four (34) days.  [55]  Defendants later withdrew the Motion for Summary Judgment with leave to refile. [68]  Plaintiff subsequently filed a Motion for Discovery, a Motion for Sanctions, and a Motion for Contempt [73; 76; 78], all of which are currently pending before the court.

On September 5, 2006, the Defendants re-filed their Motion for Summary Judgment [100] and the undersigned again issued a *Roseboro* order to the Plaintiff.  [101]  Plaintiff responded by filing another Motion for Sanctions, and a Motion for Summary Judgment.  [103; 104]  Plaintiff later filed a Motion to Stay and a Motion for Hearing [110; 110] and a Motion to Strike Defendants' Motion for Summary Judgment.  [112]  As the issues have been joined, the case is now ripe for disposition by the undersigned United States Magistrate Judge.

## V.  SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest

on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## VI. DISCUSSION

### A. Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. § 1997e(a). The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d at 677, and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731,

121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief.").  Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983.  *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

It is unclear to the court whether Plaintiff has exhausted the administrative remedies available at him with respect to the events of which he complains.  Between the dates December 31, 2004, and January 27, 2005, Plaintiff filed six (6), 10-5 Form, Step 1, grievances, including one (1) disciplinary appeal for a rules violation conviction he received.  Three (3) of those six (6) grievances were related to the alleged December 30, 2004 incident.  It appears to the court that the salient grievance at issue is Grievance # LCI-1216-04, filed on December 31, 2004 to which Plaintiff refers in his Complaint and his Motion for Summary Judgment, and in which he demanded that criminal charges be brought against Captain Nunnally.  According to the Defendants, grievances containing criminal allegations are forwarded immediately to the Chief/Designee, Inmate Grievance Branch.  If it is later determined that a criminal investigation is not required, then the grievance be processed in accordance with the procedures contained in the Inmate Grievance system policies.[3]  Defendants contend that nothing requires that the inmate be kept informed of the progress of an investigation after the inmate alleges criminal activities.[4]

The Lieber inmate grievance coordinator, Defendant Carrington, oversaw the logging of Plaintiff's grievances during the period of December 2004 and January 2005.[5]  Carrington swears

---

[3]    *See* South Carolina Department of Corrections Policy/Procedure, GA-01.12, §15.

[4]    Id.

[5]    Affidavit of Carrington, attached as [106-4] at ¶ 6.

that Plaintiff's Step 1 grievances filed during this time were properly logged into her system, read and initialed by an inmate grievance coordinator, and then returned to Plaintiff with a response telling him what to follow up.[6]  Defendants contend that Plaintiff failed to pursue the proper avenues suggested by the inmate grievance coordinator, which would have led to the exhaustion of his administrative remedies.

In response, Plaintiff has argued at length that Defendant Carrington failed to follow internal procedures regarding the handling of grievances, and he was not permitted to exhaust the grievance procedure because he was told his grievance was "on hold".  [111] Further complicating this matter, as Defendant Carrington admits by Affidavit, three (3) of Plaintiff's six (6) grievances relate to the alleged assault by Captain Nunnally on December 31, 2004.  Giving Plaintiff every benefit of the doubt as to whether there was exhaustion of the proper grievance, and finding that it is not convinced that Defendants have proven that Plaintiff failed to exhaust his available administrative remedies, the court will turn to the merits of the case.

## B.  Plaintiff's Eighth Amendment Claims

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments," (U.S. Const. amend. VIII) and applies to states through the Due Process Clause of the Fourteenth Amendment.  *See Robinson v. California*, 370 U.S. 660, 666-67 (1962)..  The Supreme Court has held that the Eighth Amendment "serves as the primary source of substantive protection of convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir.1996); *see also Wilson v. Seizer*,

---

[6]     Affidavit of Carrington, attached as [106-4] at ¶¶10 & 23.

501 U.S. 294, 298 (1991) *and Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  The Eighth

Amendment imposes certain duties upon prison officials to ensure that inmates receive adequate

food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the

safety of the inmates."  *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984); *see also Farmer v.

Brennan,* 511 U.S. 825, 832 (1994).  "Conditions within the prison may constitute cruel and

unusual punishment in violation of the Eighth Amendment if they result in 'unquestioned and

serious deprivation of basic human needs.' "  *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981).

Only those conditions depriving inmates of "the minimal civilized measure of life's necessities"

are sufficiently grave to form the basis of an Eighth Amendment violation.  *Id.*

        The Supreme Court has applied the Eighth Amendment in prison cases of two types-

those that address "conditions of confinement" and those that address "excessive force".  The

"conditions of confinement" cases assessed various acts or omissions by prison officials in the

routine administration of their facilities that caused prisoners to suffer harm.  *Estelle v. Gamble*,

429 U.S. 97 (1976); *Hutto v. Finney,* 437 U.S. 678 (1978); *Rhodes v. Chapman,* 452 U.S. 337

(1981); *Wilson v. Seiter,* 501 U.S. 294 (1991); *Helling v. McKinney,* 509 U.S. 25 (1993); *Farmer

v. Brennan,* 511 U.S. 825 (1994).  Routine discomfort is part of the penalty that convicted

prisoners pay for having committed crimes. *Rhodes v. Chapman,* 452 U.S. at 347.  Consequently,

"extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v.

McMillian,* 503 U.S. 1, 9 (1992).  The "excessive force" cases assessed the application of

physical force when controlling prisoner behavior.  *Whitley v. Albers*, 475 U.S. 312 (1986);

*Hudson v. McMillian*, 503 U.S. 1 (1992).  Both lines of cases require, to different degrees, the

satisfaction of both an objective and subjective component for establishing an Eighth

Amendment violation.

### 1. Conditions of Confinement in the Holding Cell

To prove a violation of the Eighth Amendment, an inmate must show:  (1) objectively, that the deprivation alleged is "objectively sufficiently serious" such that the plaintiff was denied "the minimal civilized measure of life's necessities;" and (2) subjectively, that the defendant officials possessed a "sufficiently culpable state of mind" associated with "the unnecessary and wanton infliction of pain."  *Farmer v. Brennan*, 511 U.S. at 834.

In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must demonstrate not only that the living conditions violated contemporary standards of decency, but also that prison officials acted with deliberate indifference to such conditions.  *Wilson v. Seiter*, 501 U.S. 294 (1991).  A plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health.  *Strickler v. Waters*, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); *Helling v. McKinney*, 509 U.S. 25 (1993).  With regard to the objective component, that the alleged deprivation be "objectively sufficiently serious," a court must consider whether the correctional officers' actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency.  *See Hudson v. McMillian*, 503 U.S. 1, 6 (1993).  A condition of harm is sufficiently serious if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary or wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  With respect to showing whether prison conditions objectively pose a significant risk of serious harm, *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) states:

> some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets.

Next, the subjective element is satisfied by demonstrating that defendants acted with deliberate indifference toward the deprivation.  A prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir.1997), *citing Farmer,* 511 U.S. at 837.  In *Farmer*, the Supreme Court held that the question was whether a prison official knew of and disregarded an excessive risk to an inmates's health or safety.  *Farmer*, 511 U.S. at 837.  The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm."  *Id*. at 842.  The subjective element test was discussed in *Whitley v. Albers*, 475 U.S. 312 (1986), a case where an inmate, shot by a guard during an attempt to quell a prison disturbance, contended that he had been subjected to cruel and unusual punishment.  The Court in *Whitley* held:

> After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety . . . . It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.[7]

> These cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.[8]

Thus, with respect to the subjective part of the test, the undersigned must review the record to determine whether the Defendants knew that their conduct involved more than a lack of due care, and that their actions were taken with "obduracy and wantonness, not inadvertence or error in good faith".

---

[7]    *Wilson*, 501 U.S. at 298-99; *quoting Whitley*, 501 U.S. at 319 (emphasis added in the original, and citations and internal quotation marks omitted).

[8]    *Wilson v. Seiter*, 501 U.S. at 299 (footnote and internal citation omitted).

In summary, then, the Plaintiff must make two showings in order to state a viable Eighth Amendment claim. The first showing requires the court to determine whether the deprivation of a basic human need was objectively "sufficiently serious", while the second requires it to determine whether the officials subjectively acted with a "sufficiently culpable state of mind." *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.), *cert. denied*, 510 U.S. 949, 1 (1993), *quoting Wilson*, 501 U.S. at 298. Plaintiff's claims will be examined under this paradigm of analysis.

Objectively, the record reflects that at this juncture, Plaintiff has shown sufficient evidence of physical injury to state a claim against Defendants for a violation of the Eighth Amendment. Plaintiff was housed in a cell for four days (from December 25 to December 29) without a mattress, running water, clothing, bedding, or a toilet. The court must consider whether the right to not be deprived of these items for four days is "clearly established" such that a reasonable officer would understand his actions violated plaintiff's rights.

The Fourth Circuit has found that conditions similar to those at bar violate the Eighth Amendment. In *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975) (en banc), a suspected mental patient challenged the conditions of an isolated confinement ("IC") area and mental observation ("MO") cell. The prisoner was held in the IC without clothes, blankets, or heat, and had only a deteriorated mattress. The MO was a barren cell, without a blanket, mattress, sink, or running water, and contained a toilet encrusted with fecal matter. The prisoner was held in both areas for approximately forty-eight hours. The Fourth Circuit found both conditions violated the Eighth Amendment, despite the relatively short duration of time. Similarly, in *Matherly v. Smith*, 813 F.2d 402 (Table) (4th Cir. 1986) (*per curiam*) Judges Sprouse, Ervin and Chapman observed, with respect to a pre-trial detainee, "[a]lthough we express no view on the merits, we believe Matherly's allegation that he was confined in an isolation cell with no clothing or bedding for two days states a claim of unconstitutional conditions in violation of the due process clause."

*Matherly, citing Bell v. Wolfish*, 441 U.S. 520 (1979); *see also Johnson v. Williams*, 788 F.2d 1319 (8th Cir. 1986) (eighth amendment violation found where prisoner in quiet cell for 18 hours on two occasions with no clothing or bedding); *and McGray v. Burrell*, 516 F.2d 357 (4th Cir. 1975), *cert. dismissed*, 426 U.S. 471 (1976) (eighth amendment violation where prisoner in isolation cell for 48 hours for mental observation with no clothing or bedding). Likewise, in *O'Connor v. Keller*, 510 F.Supp. 1359, 1372, 1375 (D.Md. 1981), the court found an eighth amendment violation where a prisoner was kept in an isolation cell for 48 hours without a mattress, blanket, toilet paper, or, for part of the time, clothing.

The court concludes that Plaintiff has shown that, objectively, the Defendants violated his rights under the Eighth Amendment with respect to conditions of confinement.

Defendants refer this court to the following cases in support of their argument that Plaintiff has failed to state an Eighth Amendment claim regarding the conditions of confinement: *Fowler v. Graham*, 478 F.Supp. 90 (D.S.C. 1979) (holding prison officials have the right to conduct random shakedowns of cells and such shakedowns do not amount to a violation of a prisoner's constitutional rights); *Hendricks v. Galloway*, 2004 WL 3090229 (D.S.C. 2004) (holding plaintiff must show he suffered serious or significant physical or emotional injury as a result of the living conditions); *Sweet v. S.C. Dept. of Corrections*, 529 F.2d 854 (4th Cir. 1975) (denial of a shower for five or several days would be a *de minimis* violation of sanitary requirements). The court finds these cases inapposite to the facts at hand, and therefore unpersuasive.

### 2.  Use of Excessive Force by Defendant Nunnally

Plaintiff also alleges that Captain Nunnally kicked him in his back while he was on his knees on his mat, which caused a bruise on his back.[9] The Supreme Court has clearly

---

[9]    Captain Nunnally has, by affidavit, denied any assault or battery of Plaintiff.

established that all excessive force claims are governed by the Eighth Amendment's cruel and Unusual Punishment Clause. *Whitley v. Albers*, 475 U.S. 312 (1986). In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind ⋯ or the pain itself [is] such that it can properly be said to constitute more than de minimis injury.' " *Taylor*, 155 F.3d at 483-84 (*citing Norman*, 25 F.3d at 1263 n. 4).

In the present case, there is no evidence, that Plaintiff suffered any injury besides a large bruise on his back. The lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no violation of his constitutional rights. *See Taylor*, 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers de minimis."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted de minimis injury).

Based upon the foregoing, summary judgment should be granted as to this claim.

### C. Plaintiff's Claim that Grievance Procedures Were not Followed

To the extent Plaintiff's complaint states a due process violation based on alleged failures to follow the prison's grievance process, such a claim is without merit. The Fourth Circuit has held that "the Constitution creates no entitlement to [prison] grievance procedures or access to any such procedure voluntarily established by a state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994). Any due process claim premised on the grievance procedure is without legal support.

### D.  Plaintiff's Claim that Regarding Inadequate Medical Care

In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citations omitted).  Mere negligence or malpractice does not violate the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).  To the extent that Plaintiff's allegations concern his disagreement with the provided medical treatment, he fails to show a constitutional violation.

Plaintiff has not set forth any evidence, but for bald allegations, that the Defendants were deliberately indifferent to his health care needs and therefore has failed to state an Eighth Amendment claim.

### E.  Conspiracy

The Plaintiff alleges the Defendants Burtt, Bodison, Thompson, Nettles and Elka conspired to deprive him of basic human needs and failed to protect him from other inmates.[10] Plaintiff also alleges that Carrington, Antley, and/or Burtt conspired to "hold" his grievances inside LCI so he would not be able to obtain outside review.[11]

---

[10]     *See* Complaint [1] at unnumbered p. 10.

[11]     *See* Complaint [1] at unnumbered pages 18-19.

To establish a civil conspiracy under § 1983, the plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The plaintiff must come forward with specific evidence that each member of the alleged conspiracy shared the same conspiratorial objective. *Id.* To survive a summary judgment motion, the plaintiff's evidence must reasonably lead to the inference that the defendants came to a mutual understanding to try to "accomplish a common and unlawful plan." *Id.* The plaintiff's allegation must amount to more than "rank speculation and conjecture" and the plaintiff must show that the defendants possessed an intent to commit an unlawful objective. *Id.* Here, the Plaintiff has presented nothing other than speculation that there was a conspiracy.

## RECOMMENDATION

Based upon the foregoing, it is recommended that Plaintiff's conditions of confinement cause of action be set for a trial, and that the other causes of action be denied and dismissed. Thus, the undersigned recommends as follows:

**Plaintiff's Motion for Discovery (requests to admit regarding his allegations surrounding his conditions of confinement in the holding cell) [73] be granted ;**

**Plaintiff's Motion for Sanctions [76] is deemed moot;**

**Plaintiff's Motion for Contempt [78] is deemed moot;**

**Defendants' Motion for Summary Judgment [100] should be denied;**

**Plaintiff's Motion for Sanctions [103] is deemed moot;**

**Plaintiff's Motion for Summary Judgment [104] should be denied;**

**Plaintiff's Motion to Stay [110] is deemed moot;**

**Plaintiff's Motion for a Hearing [110] is deemed moot;** and

**Plaintiff's Motion to Strike [112] is deemed moot.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

December 1, 2006
Charleston, South Carolina

## <u>Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"</u>
## <u>& The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed.  <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **<u>but</u> <u>not</u> <u>thereafter</u>**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* <u>Keeler v. Pea</u>, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and <u>Oliverson v. West Valley City</u>, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**

**United States District Court**

**Post Office Box 835**

**Charleston, South Carolina 29402**